**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| BRIAN PETERS,<br>　　　　　Plaintiff,<br>　　v.<br>RFI ENTERPRISES, INC.,<br>　　　　　Defendant. | Case No. 18-cv-02771-BLF<br><br>**ORDER GRANTING MOTION TO REMAND**<br>[Re: ECF 13] |

Before the Court is Plaintiff Brian Peters' ("Peters") motion to remand on the ground that there is no federal question jurisdiction. Mot., ECF 26. For the reasons stated below, the Court GRANTS Peters' motion.

**I.　BACKGROUND**

On March 5, 2018, Peters, a former employee of Defendant RFI Enterprises, Inc. ("RFI") filed a Private Attorneys General Act Complaint in Superior Court of the State of California, Santa Clara County, on behalf of all employees aggrieved between December 28, 2016 and the present. Compl., ECF 1, Exh. A. In his complaint, he alleges that RFI violated several provisions of the California Labor Code by failing to (a) timely pay wages to its employees; (b) correctly calculate the regular rate of pay for employees, leading to incorrect overtime payments; and (c) provide proper payroll records. *Id.* The following facts are taken from Peters' complaint.

Peters was a non-exempt employee at RFI's location in San Jose, California. *Id.* ¶ 8. Throughout Peters' employment, RFI failed to pay him and other non-exempt employees timely wages by failing to pay the wages within seven days of the close of the relevant payroll period. *Id.* ¶ 17. RFI also failed to pay Peters and other non-exempt employees overtime wages at the correct rate of pay by failing to include certain non-discretionary wages in the calculation of the regular

rate of pay, which is used in turn to calculate overtime wages. *Id.* ¶ 18. Moreover, because of this miscalculation, employees' itemized wage statements were inaccurate. *Id.* ¶ 19.

Peters filed a state court complaint asserting a single cause of action under the Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code § 2698, *et seq. Id.* ¶ 21–25. To support his PAGA claim, Peters alleges that RFI violated the following sections of the California Labor Code: (1) Section 204, for failure to timely pay wages; (2) Sections 510, 558, and 1194, for failure to correctly calculate the regular rate of pay, and in turn, overtime wages; and (3) Section 226(a), for failure to provide proper payroll records. *Id.* ¶ 23.

On May 9, 2018, RFI filed its answer, in which it asserts a general denial and nine affirmative defenses, three of which are relevant here. Ans., ECF 1, Exh. F at 2–3. In its second affirmative defense, Ans. at 2, RFI alleges that Peters' PAGA claim, as composed of his state law claims, is preempted by Section 301 of the Federal Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185. The LMRA provides for federal question jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization" that represents certain eligible employees. *Id.* In its Notice of Removal ("Not."), ECF 1 ¶ 5, RFI alleges that, during the relevant time period, Peters and RFI's other non-exempt employees were subject to a valid collective bargaining agreement ("CBA").[1] *See* Collective Bargaining Agreement ("CBA"), ECF 1, Exh. D. Peters does not mention this CBA in his complaint. In its fourth affirmative defense, RFI alleges that the collective bargaining agreement ("CBA") exempted Peters under Labor Code § 204(c) from his right to receive timely wages. Ans. at 2. Likewise, in its fifth affirmative defense, RFI alleges that the CBA exempted Peters under Labor Code § 514 from California's overtime requirements. *Id.*

On May 10, 2018, RFI removed the case to this Court based on federal question jurisdiction claiming that "Section 301 of the [LMRA] preempts Plaintiff's claims under California law." Not. ¶ 3. Peters now moves to remand, arguing that there is no federal question jurisdiction. Having carefully considered the submitted papers, the Court GRANTS Peters'

---

[1] For the purposes of resolving this Motion only, this Court assumes that a valid collective bargaining agreement applied to Peters and the other aggrieved employees.

2

motion and remands this action to state court for the reasons discussed below.

## II. LEGAL STANDARD

Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Courts strictly construe the removal statute against removal jurisdiction. *E.g.*, *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther*, 533 F.3d at 1034 (citation omitted); *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." Federal question jurisdiction "is determined, and must exist, as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Removal pursuant to Section 1331 is governed by the "well-pleaded complaint rule," which provides that federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

There exists, however, an "independent corollary" to the well-pleaded complaint rule, known as the doctrine of complete preemption. *Id.* at 393 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983)). Through complete preemption, certain "extraordinary" federal statutes "convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). LMRA § 301 is a federal statute with complete preemptive force. *See Caterpillar*, 482 U.S. at 393.

## III. DISCUSSION

The issue before this Court is whether LMRA § 301 preempts Peters' state law claims such that original federal question jurisdiction exists to support the removal of this case from state court.

3

LMRA § 301 completely preempts only claims "founded directly on rights created by collective-bargaining agreements" or "'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 395 (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). It is not enough that the "state law cause of action is conditioned on some term or condition of employment that was collectively bargained." *Alaska Airlines Inc. v. Schurke*, No. 13–35574, 2018 WL 3636431, at *4 (9th Cir. Aug. 1, 2018) (en banc). Section 301 preemption exists "only where a state law claim arises entirely from or requires construction of" a collective bargaining agreement ("CBA"). *Id.* at *1.

The Ninth Circuit has developed a two-step inquiry to determine whether a state law claim satisfies either of these preemption requirements. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). First, the court evaluates the "'legal character'" of the claim by asking "whether [the claim] seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines*, 2018 WL 3636431, at *7 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). If it does, the claim is preempted. If not, the court then asks "whether litigating the state law claim nonetheless requires interpretation of a CBA." *Id.* at *8.

Peters argues that RFI fails to satisfy either prong of the *Burnside* test as to any of the state law claims underlying his PAGA claim, including alleged violations of Labor Code §§ 204(a), 226(a), 510, 558, and 1194.[2] Mot, ECF 13, at 10. RFI challenges Peters' assertion only as to Sections 510 and 204(a), claiming that Peters' other claims (including his PAGA claim) are "derivative" of his Section 510 claim. Opp., ECF 15, at 9. This Court assumes for the sake of deciding this Motion that RFI is correct and that Peters' remaining claims are derivative of his Section 510 claim. As such, this Court need not conduct a separate preemption analysis of those claims. *Accord Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 964 (C.D. Cal. 2014). This Court decides only whether LMRA § 301 preempts Peters' claims under Sections 510 or 204(a). The Court discusses each claim in turn.

---

[2] Statutory references throughout this opinion refer to the California Labor Code unless otherwise noted.

4

### A. Labor Code Section 510

Section 510 sets requirements, in part, for properly calculating overtime compensation for certain non-exempt employees. These calculations take into account the "regular rate of pay" of an employee. Section 514 exempts employees from Section 510's requirements if certain conditions are met:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

RFI argues that the 2016 CBA triggers Section 514's exemption. Because the exemption applies, it argues, Peters' rights depend on the CBA, and thus it satisfies both steps of the *Burnside* test. Opp. at 10–12. The Court discusses both steps in turn.

#### i. Legal Character of the Claim

In the first step of the *Burnside* test, the court "evaluates the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines*, 2018 WL 3636431, at *7 (quoting *Livadas*, 512 U.S. at 123).

According to Peters, RFI fails to satisfy this step because Peters' state law claims seek to vindicate rights conferred by state law, independent of the CBA. He argues that Section 510 and 204(a) (as well as his other, unchallenged claims) are "based on substantive non-waivable rights under state law." Mot. at 10. He further argues that RFI's reliance on the exemption to Section 510 constitutes an affirmative defense that cannot establish LMRA § 301 preemption under Ninth Circuit governing precedent. *Id.* (citing *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001); *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052–53 (9th Cir. 2003)). And he cites several district court cases, including several from this district, that have specifically held that invocation of Section 514 and similar exemptions as affirmative defenses cannot serve as the sole basis for preemption and removal. *See* Mot. at 15–16; Reply, ECF 16, at 4–5.

In opposing Peters' arguments, RFI argues that Peters' right to overtime is independent of state law because the CBA triggers Section 514's exemption, and thus "the [CBA's] terms (and not state law) control any right to overtime, including the applicable rates." Opp. at 10 (citing

5

*Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098–1100 (N.D. Cal. 2014)). Because the CBA controls, it concludes, "'there is no independently created right' under the Labor Code." *Id.* (quoting *Raphael v. Tesoro Refining and Mktg. Co.*, No. 15–CV–02862–ODW, 2015 WL 3970293, at *5 (C.D. Cal. June 30, 2015)) (citing *Coria*, 63 F. Supp. 3d at 1098–1100)).

The Ninth Circuit in *Alaska Airlines* recently provided clear guidance on this step of the *Burnside* test. The Ninth Circuit explained that the claimed right or duty must be "created by the CBA itself"—that is, the CBA must be the "'only source' of the right the plaintiff seeks to vindicate." 2018 WL 3636431, at *7 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994)). To qualify then, the entirety of the claim must rely on interpretation of the CBA. *See id.* Where, by contrast, the claims "are not simply CBA disputes by another name"—if they simply "refer to a CBA-defined right, rely in part on a CBA's terms of employment, run parallel to a CBA violation, or invite use of the CBA as a defense"—the claims are not preempted. *Id.* at *8 (citations omitted). The "primary point of reference" in this preemption analysis is "the plaintiff's pleading." *Id.* at *9.

The Ninth Circuit's most recent guidance confirms, as the majority of courts to decide the issue have held, that invocation of an exemption like the one codified in Section 514 is not sufficient to find that LMRA § 301 preempts a claim grounded in state law. For this reason, the Court holds that RFI fails to satisfy the first step of the *Burnside* test.

Section 510 confers specific rights for overtime pay to certain employees. Here, Peters' complaint (the "primary point of reference" for the preemption analysis) claims only a violation of state law, with no reference to the CBA. This omission makes sense, because these rights exist even in the absence of any CBA; by definition, they are not "created by the CBA itself." *Alaska Airlines*, 2018 WL 3636431, at *7. That an exemption to Section 510 exists for employees covered by a qualifying CBA does not change the fact that these rights are conferred by state law in the first instance—the legal character of the claim "seek[s] purely to vindicate a right or duty" created by *state law*, not the CBA. *Id.* Likewise, the invocation of this exemption as an

6

affirmative defense does not change the character of the claim.[3] *See id.* at *8 (noting that the claim must do more than "invite use of the CBA as a defense"); *see also Caterpillar*, 482 U.S. at 398 ("[T]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule . . . ."). In practical terms, if the affirmative defense is successful and the exemption applies, Peters simply loses his state law claim. If it does not apply, the CBA is irrelevant.

Myriad other courts in this Circuit have come to the same conclusion. For example, in *Vasserman*, the court held that LMRA § 301 did not preempt the plaintiff Vasserman's state law claims where the defendant invoked Section 514 as a defense. 65 F. Supp. 3d at 954–55. The court first held that "the fact that the § 514 exemption may apply [did] not alter the substance of Vasserman's [Section 510] claim," which was rooted entirely in state law. *Id.* at 954. The court then held that the defendant's reliance on Section 514 as a defense did not change the analysis. *Id.* at 954–55 (citing *Placencia v. Amcor Packaging Distrib., Inc.*, No. SACV 14–0379 AG, 2014 WL 2445957, at *2–*3 (C.D. Cal. May 12, 2014)). Even if the defendant's Section 514 defense were to ultimately prevail, "Vassserman's claim [was] premised on state law rights afforded by § 510, not on rights created by the CBA." *Id.* at 955. The defendant thus failed to prove that Vasserman's claim was preempted under the first *Burnside* step. *See also Gregory*, 317 F.3d at 1052–54.

At least one court in this district has reached that same conclusion as to a substantively identical argument based on a plaintiff's claim under Section 512(a) regarding meal periods and a defendant's defensive invocation of the exemption codified at Section 512(e). *See Lopez v. Sysco Corp.*, No. 15–CV–04420–JSW, 2016 WL 3078840, at *3–*4 (N.D. Cal. Jan. 25, 2016) (citing *Vasserman*, 65 F. Supp. 3d at 954–55; *Placencia*, 2014 WL 2445957, at *2). And other courts have reached the same conclusion as to both Section 510 claims and other similar state-law claims.

---

[3] Though RFI claims that reading its invocation of Section 514 as a defense is "simplistic and misses the point," Opp. at 8 n.4, the law is clear that in California "overtime exemption is an affirmative defense that must be pled and proved by the employer." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 825 (9th Cir. 2011) (citing *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999)). Indeed, RFI asserts the Section 514 overtime exemption as its fifth affirmative defense. *See* Ans. at 2.

7

*See, e.g.*, *Meza v. Pac. Bell Tel. Co.*, No. 17–CV–00665–LJO, 2017 WL 3503408, at *5–*6 & n.2 (E.D. Cal. Aug. 16, 2017) (Section 510); *Cuellar-Ramirez v. US Foods, Inc.*, No. 16–CV–00085–RS, 2016 WL 1238603, at *4–*6 (N.D. Cal. Mar. 22, 2016) (Section 512(a) and Section 510); *Placencia*, 2014 WL 2445957, at *2–*3 (Section 510). To the extent the district court's ruling in *Coria*, 63 F. Supp. 3d at 1098–1100, is contrary to this wealth of case law, this Court respectfully finds these contrary cases more persuasive. *See, e.g.*, *Young v. Securitas Sec. Servs. USA, Inc.*, No. 17–CV–05342–JCS, 2018 WL 1142190, at *7 (N.D. Cal. Mar. 2, 2018) (finding *Vasserman* more persuasive); *Lopez*, 2016 WL 3078840, at *4 (same).

In sum, this Court agrees with the overwhelming majority of courts to decide the issue and finds that RFI's invocation of the Section 514 exemption as an affirmative defense does not change the legal character of Peters' state-law claim. The Court thus holds that RFI fails to satisfy the first *Burnside* step.

### ii. Whether the Claim Requires Interpretation of the CBA

Even where a CBA does not create the right at issue, LMRA § 301 may still preempt the state-law claim when "litigating the state law claim . . . requires interpretation of a CBA," *Alaska Airlines*, 2018 WL 3636431, at *8—that is, where the claim is "substantially dependent" upon an analysis of the CBA, *Burnside*, 491 F.3d at 1060. The term "interpretation" in this context is "construed narrowly, . . . . '[I]t means something more than consider, refer to, or apply.'" *Alaska Airlines*, 2018 WL 3636431, at *8 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) (internal quotation marks omitted)). For the claim to be preempted, there must be an "active dispute" over the meaning of the CBA's terms. *Id.* Given this narrow construction, "the result of preemption at the second step is generally *not* the extinguishment of the state law claim." *Id.*

At this stage, this Court need not ask whether a court must interpret the CBA to resolve the *merits* of the ultimate dispute (*i.e.,* whether RFI failed to provide Peters with the correct overtime payments). Instead, it must decide only whether a court must interpret the CBA in order to determine whether the Section 514 exemption applies. *See Vasserman*, 65 F. Supp. 3d at 956 (holding that no interpretation was required to determine the applicability of the exemption);

8

*Lopez*, 2016 WL 3078840, at *4 (same). If a court must interpret the CBA to determine if the exemption applies, the claim would be substantially dependent on the CBA—its viability would turn on how the CBA is interpreted. If, by contrast, a court can determine whether the exemption applies by merely referencing the CBA, the claim is not substantially dependent on any interpretation of the CBA, and the claim is not preempted.

According to Peters, RFI fails to satisfy the second prong of the *Burnside* test because a court need not interpret the CBA to determine whether it satisfies Section 514's requirements—specifically, whether the CBA provides for "premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Peters claims that the overtime calculations contemplated by the CBA are "unambiguous" and readily comparable to the regular rate provided by California law. Mot. at 14. He admits that the term "regular rate" is not defined in the CBA, but argues that an employee's hourly rate inarguably constitutes his or her regular rate. Reply at 6. Peters analogizes this case to *Controulis v. Anheuser-Busch*, No. CV 13–07378 RGK, 2013 WL 6482970, at *2 (C.D. Cal. Nov. 20, 2013), where the court determined the claim was not substantially dependent on the CBA because the CBA "explicitly provide[d]" for how to calculate the overtime rate, including by providing a definition of the regular hourly rate. *See* Mot. at 13–14. Peters argues that the CBA in this case is equally clear, such that the issue here is "not *how* the overtime rate is calculated, . . . but whether that calculation"—(here, the failure to include wage premiums and shift differential pay)—"violates California law." *Controulis*, 2013 WL 6482970, at *2; *see* Reply at 6.

RFI, by contrast, argues that Peters' overtime claims require interpretation of "at least several terms and provisions" in the CBA, including interpretation of the undefined terms "regular rate," "shift hourly rate," "pyramiding," and "straight time rate." Opp. at 11 (quoting CBA §§ 4.2 (A), (D), (E); 4.3(A); and Addendum A). According to RFI, "[e]ach of these terms . . . directly impacts the overtime that may be due." *Id.* RFI analogizes this case to *McKinley v. Southwest Airlines Co.*, No. CV 15–02939–AB, 2015 WL 2431644, at *8 (C.D. Cal. May 19, 2015), where the court held the claim was substantially dependent on the CBA because the CBA did not set

9

forth, on its face, how to properly calculate the hourly rate, and in turn the regular rate for purposes of calculating overtime pay. *See* Opp. at 12. Like that case, RFI argues, the claim here substantially depends on interpretation of the CBA.

This Court finds that Peters' claim is not substantially dependent on the CBA, because a court need not interpret the CBA to determine whether the exemption applies. The CBA clearly dictates how to calculate overtime payments. *See* CBA §§ 4.2, 4.3. Though RFI argues that the term "regular rate" is undefined, RFI's counsel has elsewhere made clear that "it is beyond dispute that when an employee is paid an hourly rate, the hourly rate constitutes their regular rate." *See* Reply at 6 & n.3 (quoting Decl. of Kristen M. Agnew, Dkt. 12-1, *Peters v. RFI Enterprises Inc.*, No. 18–CV–1187–BLF (N.D. Cal.)). From there, the provisions of the CBA are straightforward: Addendum A sets the applicable hourly rates (termed ""straight time rate") for employees by classification (as dictated by CBA § 4.7). In § 4.2(D), the CBA provides that "all overtime work . . . shall be paid at one and one-half (1-1/2) times the 'shift' hourly rate," which is plainly defined in CBA §§ 4.2(A) and (B). Finally, § 4.3 sets forth the proper calculations for overtime rates outside of regular working hours and on holidays and weekends. All a court need do is refer to the CBA to determine whether it exempts Peters under Section 514. Mere reference to the CBA is not enough to find the claim substantially dependent on the CBA. *See Alaska Airlines*, 2018 WL 3636431, at *8.

This case is thus more similar to *Controulis* than *McKinley*. The court in *McKinley* determined that a court would need to "consider the interaction of multiple CBA provisions to calculate the Plaintiff's regular rate of pay." 2015 WL 2431644 at *6. At the same time, the *McKinley* court distinguished *Controulis*, where the CBA "laid out specific calculations for employees' regular rates of pay" for the purposes of calculating overtime. *Id.* at *8; *see id.* at *7 (distinguishing *Controulis*). Here, the regular rate of pay is indisputably the hourly rate, which is clearly set forth in Addendum A. The overtime payments reliant on that rate are straightforward. As such, a court need not interpret the CBA to determine the amount of overtime pay, and in turn whether the Section 514 exemption is met. *See Gregory*, 317 F.3d at 1052–53. Because the claim is not substantially dependent on the CBA, LMRA § 301 does not preempt Peters' claim under

10

this step of the *Burnside* test either.

RFI thus fails to demonstrate that LMRA § 301 preempts Peters' state-law claim under Section 510, such that this claim cannot serve as the basis for federal question jurisdiction.

### B. Labor Code Section 204(a)

Section 204(a) sets requirements, in part, for the timing of wage payments. Section 204(c) exempts employees from Section 204(a)'s requirements if they are "covered by a collective bargaining agreement that provides different pay arrangements." These "different pay arrangements" are considered in relation to those arrangements mandated by Sections 204(a) and (d), which together require that wages be paid within a certain amount of time following the close of a pay period.

RFI argues that the CBA triggers Section 204(c)'s exemption. Because the exemption applies, it argues, Peters' rights depend on the CBA, and thus both steps of the *Burnside* inquiry are satisfied. Opp. at 13. The Court discusses both steps in turn.

#### i. Legal Character of the Claim

Unlike with Section 514, RFI does not expressly argue that the alleged application of Section 204(c) transforms the claim into one based on a right "created by" the CBA, so as to satisfy the first step of the Burnside factor. *Alaska Airlines*, 2018 WL 3636431, at *7. But to the extent RFI does so argue, the Court holds that, as with RFI's invocation of Section 514, the mere assertion of Section 204(c) as an affirmative defense (Ans. at 2) does not create LMRA § 301 preemption under this step. As with Section 510, Section 204(a) confers specific rights on employees, independent of the existence of a CBA. Invocation of an exemption based on provisions in a CBA does not transform those state-law rights into rights conferred by the CBA. *See Vasserman*, 65 F. Supp. 3d at 954–55; *Wawock v. CSI Elec. Contractors Inc*, No. CV 12–9308 ABC, 2013 WL 12114469, at *2 (C.D. Cal. Jan. 7, 2013) (holding that Section 204 exemption is a defense). Thus, for the same reasons that RFI's invocation of Section 514 fails, its invocation of Section 204(c) must fail as well.

#### ii. Whether the Claim Requires Interpretation of the CBA

RFI does argue, by contrast, that the CBA sets forth a "different pay arrangement" because

11

it sets forth a different schedule with respect to when wages should be paid than is ordinarily required under Section 204(a). Opp. at 13 (citing CBA § 4.7). CBA § 4.7 states that "[w]ages shall be paid weekly and no more than three (3) days wages shall be withheld." RFI contends that this provision is "vague, requiring analysis and interpretation," because it does not contain "any express provision for *when* RFI must pay weekly wages." *Id.* Peters argues that it is precisely because the CBA lacks such a provision that a court need not interpret it to determine whether a different pay arrangement exists. *See* Mot. at 12–13; Reply at 7–8. While the provision is explicit as to "how frequently an employee is to be paid, . . . in no way does it address when the employee is to receive wage payments from Defendant." Mot. at 13.

As with Peters' Section 510 claim, the question here is whether the existence of a different pay arrangement is evident on the face of the CBA such that a court can determine, without interpreting the CBA, whether the Section 204(c) exemption applies. This Court holds that the CBA's provisions related to the timing of wage payments are unambiguous, and thus a court need not interpret the CBA to determine whether the exemption applies. Both parties agree that the CBA provisions do not speak to the frequency at which RFI must pay its employees. And the relevant provisions the CBA does include are clear on their faces. Whether such provisions can nonetheless constitute a "different pay arrangement" is a question of state law, dependent on interpretation of Section 204, not on interpretation of the CBA. *See Gregory*, 317 F.3d at 1052–53; *cf. Alaska Airlines*, 2018 WL 3636431, at *12 (holding that dispute over whether the plaintiff satisfied the terms of the statute upon which the claim was based was a "dispute over state law," not the CBA). Thus the claim is not substantially dependent on state law, and RFI fails to satisfy the second step of *Burnside*.

Having failed both steps of the *Burnside* test, RFI cannot demonstrate that LMRA § 301 preempts Peters' state-law claim under Section 204(a), such that this claim cannot serve as the basis for federal question jurisdiction.

**IV. ORDER**

For the foregoing reasons, the Court finds that RFI has not met its burden to establish that removal is proper and GRANTS the motion to remand. IT IS HEREBY ORDERED that:

12

1. The motion to remand is GRANTED.

2. The Clerk shall REMAND this case to Santa Clara County Superior Court. All other matters are TERMINATED and VACATED, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: August 15, 2018

_____
BETH LABSON FREEMAN
United States District Judge